ROBERT CABLETON *v.* STATE OF ARKANSAS

5302                                     420 S. W. 2d 534

Opinion Delivered October 30, 1967
[Rehearing denied December 4, 1967].

*John W. Walker,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. This appeal is taken from the action of the trial court affirming judgments of the Mayor's Court of the City of Gould in two cases and the Justice of the Peace Court of Gould Township in Lincoln County in three cases. All charges were misdemeanors. The first conviction was had in the Mayor's Court on December 18, 1965 upon a charge of disturb-

ing the peace and obstructing justice. In that case a fine of $100.00 and costs of $10.50 were assessed against appellant. All of the remaining convictions were on October 4, 1966, with total fines imposed amounting to $421.50. The costs assessed totaled $43.00. Jail sentences were for a total of nine months. The charges were public drunkenness, resisting arrest, assaulting an officer and disturbing the peace. Timely appeals were taken. Judgments affirming were entered in the Lincoln Circuit Court on the 13th day of February 1967. Each recites that affirmance of the original judgment was entered when appellant failed to appear after having been called three times at the bar of the court by the sheriff. Motions to vacate these judgments and for new trial were timely filed, heard and denied.

Appellant seeks reversal on the basis that in the Mayor's and Justice of the Peace Courts he was not advised of his right to counsel and that no offer was made to appoint counsel if he were unable to afford his own lawyer. The gist of appellant's argument appears to be that the failure to appoint counsel for an indigent charged with a misdemeanor on which a jail sentence may be imposed is a violation of his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States. The records in the original trial courts are silent on the subjects of indigency, advice as to right to counsel and request for representation by an attorney. The cases heard there in October were continued from September 15, 1966, however, at the request of appellant. On the margin of the docket sheet in the case heard December 18, 1965, the names of John Walker and Deactor [Delector] Tiller are listed at attorneys for appellant. No statement as to their appearance or nonappearance is recited in the judgment.

Appellant's contention is based largely on the holding in *Gideon* v. *Wainwright,* 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799. This court has held that failure to appoint counsel under similar circumstances did not vio-

late the constitutional rights of one charged with a misdemeanor. *Winters* v. *Beck,* 239 Ark. 1151, 397 S. W. 2d 364 (cert. denied 385 U. S. 907, 87 S. Ct. 207, 17 L. Ed 2d 137). It was pointed out in that opinion that the *Wainwright* case dealt with a felony charge where the defendant had been sentenced to five years in the penitentiary. Appellant urges, however, that the felony-misdemeanor distinction is illogical and should be abandoned, relying on cases from other jurisdictions, at least two of which, *McDonald* v. *Moore,* 353 F. 2d 106 (5th Cir.) and *Harvey* v. *Mississippi,* 340 F. 2d 263 (5th Cir.), were decided before the Supreme Court denied certiorari in *Winters* v. *Beck* and were obviously considered by that court as they are cited in the dissenting opinion of Mr. Justice Stewart. Not only was the Supreme Court fully aware of the decision of the Fifth Circuit in the *McDonald* case, but the Circuit Court, even while rejecting the "felony-misdemeanor" rule, the "serious offense" rule[1] and the "peculiar, particular or special circumstance"[2] rule and refusing to adopt a "petty offense" rule, recognized that the *Wainwright* case did not require the appointment of counsel in all cases, for it said:

> "* * * It seems unlikely that a person in a municipal court charged with being drunk and disorderly, would be entitled to the services of an attorney at the expense of the state or the municipality. Still less likely is it that a person given a ticket for a traffic violation would have the right to counsel at the expense of the state. If the Constitution requires that counsel be provided in such cases it would seem that in many urban areas there would be a requirement for more lawyers than could be made available. Even with the assistance of law students, whose services may be requested under some of the

[1] Announced in cases such as *State* v. *Anderson,* 96 Ariz. 123, 392 P. 2d 784.

[2] This was the rule announced in *Betts* v. *Brady,* 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595.

Criminal Justice plans, the demand might come near exceeding the supply.''

It should be noted that the *Harvey* case is relied on as precedent in the *McDonald* case.

In considering *Gideon* v. *Wainwright,* there are factors to be weighed other than the fact pointed out in the *Winters* case that it involved a felony conviction. That decision did not declare that the Fourteenth Amendment made the guarantees of the Sixth obligatory, as such, upon the states. Its rationale was that those pledges and guarantees contained in the Bill of Rights of the Federal Constitution, which are implicit in the concept of ordered liberty, are fundmental principles of liberty and justice which are the bases of our political and civil institutions and are fundamental and essential to a fair trial, are made obligatory upon the states by the Fourteenth Amendment. In arriving at its conclusion, the court relied upon *Powell* v. *Alabama,* 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A.L.R. 527, as well as *Betts* v. *Brady,* 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595 (the result of which it overruled) and *Palko* v. *Connecticut,* 302 U. S. 319, 58 S. Ct. 149, 82 L. Ed. 288, (in which the double jeopardy provision of the Fifth Amendment was held not to be obligatory upon the states). Thus, the statement with reference to right to counsel ''[i]n all criminal prosecutions'' is not obligatory upon the states, having never been considered fundamental to a fair trial or basic concepts of liberty and justice in any cases other than felonies. The United States Supreme Court has long recognized that a valid distinction can be made between serious and petty offenses in application of Sixth Amendment guarantees. *District of Columbia* v. *Clawans,* 300 U. S. 617, 57 S. Ct. 660, 81 L. Ed. 843.

Appellant also relies on cases such as *People* v. *Witenski,* 15 N. Y. 2d 392, 259 N. Y. S. 2d 413, 207 N. E. 2d 358. This decision was by a court divided four to

three. It can be distinguished. In New York there was a statute (Code of Criminal Procedure § 699) requiring a magistrate to immediately inform a defendant of his right to aid of counsel at every stage of the proceedings and before any further proceeding is had. The court said that it had previously decided there was so little real difference in that statute and Code of Criminal Procedure § 308, requiring that when a defendant appears upon arraignment on indictment, he must be asked if he desires the aid of counsel and that the court must assign counsel if he does. Of course, our statutes only require the appointment of counsel in felony cases. Ark. Stat. Ann. § 43-1203 (Repl. 1964). Subsequently, the New York Court of Appeals recognized that the *Wainwright* case did not extend the right to assigned counsel to all crimes, in an opinion holding that these constitutional requirements were not applicable where a defendant was charged with a traffic law violation. *People* v. *Letterio,* 16 N. Y. 2d 307, 266 N. Y. S. 2d 368, 213 N. E. 2d 670.

Another case cited by appellant is *People* v. *Mallory,* 378 Mich. 538, 147 N. W. 2d 66. An examination of that decision leads to the conclusion that it is based upon peculiar language of the Michigan Constitution, the rule making power of that court, and statutes of that state. The opinion recognizes that the decisions of the United States Supreme Court may not be controlling of the question of right to counsel in misdemeanor cases.

We choose not to anticipate that the Supreme Court of the United States will extend the rule of the *Wainwright* case to misdemeanor cases. We rather choose to hold that the public policy of this state on the right to appointed counsel is expressed in our statutory law. While the statute requiring appointment of counsel in felony cases was adopted long before the decision in *Gideon* v. *Wainwright, supra,* we take judicial notice that the General Assembly of our state has met in regular session twice subsequently. We cannot assume that, in failing to extend our law to require appointment of

counsel in cases other than felonies, they were ignorant of that decision. Any change in the law of Arkansas, after certiorari was denied in the *Winters* case, should either come through legislative enactment or by an express decision of the United States Supreme Court.

Our decision in the *Winters* case does not stand alone. It has been followed or cited with approval in other jurisdictions. See, *e. g., City of Toledo* v. *Frazier,* 10 Ohio App. 2d 51, 226 N. E. 2d 777; *State* v. *Sherron,* 268 N. C. 694, 151 S. E. 2d 599; *City of New Orleans* v. *Cook,* 249 La. 820, 191 So. 2d 634.

In Florida, the arena in which at least five of the "constitutional right to counsel" cases have been originally contested, the Supreme Court has also held that the *Wainwright* case did not apply to misdemeanors. They based their holding that an indigent defendant accused of a misdemeanor was not entitled to appointed counsel on the action of their legislature providing for a public defender for indigents in non-capital felony cases. This, they said, constituted a declaration of the state's public policy. *Fish* v. *State,* 159 So. 2d 866 (Fla.); *Watkins* v. *Morris,* 179 So. 2d 348 (Fla.). The Ohio court has also found a declaration of public policy in its statutes. *City of Toledo* v. *Frazier, supra.* It is suggested by the Supreme Court of North Carolina that the United States Supreme Court has not put a responsibility upon a state in this field any greater than that imposed by its own statutes. *State.* v. *Sherron,* 268 N. C. 694, 151 S. E. 2d 599.

Practical considerations must enter into these policy determinations. As stated by the District Court of the Eastern District of North Carolina, it must be recognized that the right to counsel is not an end in itself, but a means for achieving the most perfect justice possible in a given situation, which requires the striking of a balance between an ideal situation and what is humanly possible to achieve. *Creighton* v. *State of North Carolina,* 257 F. Supp. 806. Practical consideration of the

impact of application of abstract constitutional principles on the administration of justice is not without precedent. *Johnson* v. *State of New Jersey,* 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882; *Linkletter* v. *Walker,* 381 U. S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601; *Tehan* v. *United States, ex rel Shott,* 382 U. S. 406, 86 S. Ct. 459, 15 L. Ed. 2d 453; *State* v. *Zucconi,* 93 N. J. Super. 380, 226 A. 2d 16. Most misdemeanor cases are tried in Arkansas in municipal courts, justice of the peace courts, police courts and mayor's courts. According to the Second Annual Report of the Judicial Department of Arkansas, the 61 municipal courts had 108,040 criminal charges and 201,867 traffic charges[3] filed in the year 1966. According to the same report, there were 2,267 justices of the peace in Arkansas in 1967, and there is no reason to believe that the number was any less in 1966. We have no record of the number of police and mayor's courts in Arkansas of which we can take judicial notice, nor of the number of cases brought before them. We recognize that some of the criminal charges before the municipal courts are felony cases in which the judges sit only as committing magistrates.

The practical impossibility of implementing a system such as appellant urges is obvious when we consider that there are more justices of the peace[4] in Arkansas than there are resident practicing lawyers and that there are counties in which there are no practicing lawyers.[5] The impact of such a rule would seriously impair the administration of justice in Arkansas and impose an intolerable burden upon the legal profession.

---

[3]This did not include 108,094 non-moving traffic charges in the City of Little Rock. In some of the courts, traffic offenses are included in the criminal cases rather than being listed separately.

[4]All have jurisdiction of misdemeanors except those in townships where municipal courts sit. Ark. Stat. Ann. § 22-709 (Repl. 1962) and §§ 43-1405, 43-1408 (Repl. 1964); *Logan* v. *Harris,* 213 Ark. 37, 210 S. W. 2d 301 (1948).

[5]This is indicated by records in the office of the clerk of this court of current licenses to practice.

It has also been held that constitutional rights are not invaded in misdemeanor cases in which counsel is not appointed for indigent defendants, even though otherwise required, where the defendant has a right to trial de novo on appeal where he is represented by counsel. *Doss* v. *State of North Carolina,* 252 F. Supp. 298. In the case at bar, appellant was provided that right. Ark. Stat. Ann. § 26-1308 (Repl. 1962); § 19-1204 (Repl. 1956); § 44-509 (Repl. 1964). Appellant took appropriate steps to avail himself of this right and was represented by counsel. By his failure to make timely appearance in the circuit court, however, he forfeited this right. The cases stood for trial at any time after the transcripts were filed in the circuit court. Ark. Stat. Ann. § 44-506 (Repl. 1964). Upon his failure to appear when the case was set for trial, the circuit court was authorized to affirm in the absence of good cause shown. Ark. Stat. Ann. § 44-507 (Repl. 1964). Appellant does not really question this, but contends that his constitutional rights under the Sixth and Fourteenth Amendments were also violated because he was not granted a continuance. At any rate, if appellant did appear in court on the date set (as advised to do by his attorney) and was only a few minutes late, as he contends, there is nothing in the record to indicate that he made his presence known to the trial court.

Appellant's request for a continuance was made to the prosecuting attorney, not the court. This being so, appellant has no standing to complain. Be that as it may, the excuse given for the requested continuance is not ground for reversal. The granting or refusal of a continuance is within the sound discretion of the trial court and reversal is not authorized unless the trial court abused its discretion. *Jackson* v. *State,* 54 Ark. 243, 15 S. W. 607; *Perez* v. *State,* 236 Ark. 921, 370 S. W. 2d 613. Appellant says the continuance should have been granted because his attorney had what the latter considered a more important case set for trial in Camden on the same day. It has been held that the failure to grant

a continuance on this account is not an abuse of discretion. The following language of *Brickey* v. *State*, 148 Ark. 595, 231 S. W. 549, is applicable here:

"* * * Counsel who are employed to represent clients having cases pending in courts must so arrange their business as to be able to appear to represent their clients when those cases are called for trial. The business of the courts cannot be controlled, interrupted, or made to conform to the business interests of attorneys. The fact that an attorney may have cases for clients pending in different courts whose terms convene at the same time, and which condition may render it impossible for the attorney to be in attendance at one of the courts, is no imperative reason for the continuance of the causes in which he is employed in the court which he does not attend. These are matters addressed to the sound discretion of the presiding judge of the court, who must conduct the public business entrusted to him in a manner most conducive to the interests of the public whom he serves. It is never an abuse of discretion for the court to refuse to grant a continuance in a cause on account of the absence of employed counsel, unless such counsel is absent by reason of sickness or some other unavoidable casualty. The absence of an attorney from a court where causes are pending in which he is employed as counsel because of causes pending in other courts in which he is also employed as counsel is not an unavoidable casualty."

Appellant's remaining point for reversal is that he was denied due process of law in violation of Article II, Section 8 of the Arkansas Constitution and the Fourteenth Amendment to the United States Constitution, contending that the Mayor of Gould, being interested in the maintenance of the city treasury into which fines were paid, could not give him a fair trial. As a further basis he contends that the Mayor had an interest in

avoiding demonstrations which might tend to excite the inhabitants of the city or disrupt the public peace. Nothing in the record shows that any such demonstration was involved, contemplated or feared by anyone. While we find no merit in either contention, this question was first raised on appeal, not having been incorporated into the motion for new trial. This question, then, cannot properly be considered on this appeal. *Randall* v. *State,* 239 Ark. 312, 389 S. W. 2d 229; *Clayton* v. *State,* 191 Ark. 1070, 89 S. W. 2d 732; *Fain* v. *State,* 189 Ark. 474, 74 S. W. 2d 248. Here again, however, the alleged prejudice would have been unimportant if appellant had availed himself of a trial de novo.

The    judgments are affirmed.