**Captain Henry BECK, Superintendent of the Pulaski County Penal Farm; and Clint Cavin, Surety, Appellants,**

**v.**

**Robert WINTERS, Appellee.**

**No. 19278.**

United States Court of Appeals
Eighth Circuit.

Feb. 25, 1969.

Certiorari Denied June 16, 1969.
See 89 S.Ct. 2104.

———◆———

H. Clay Robinson, Deputy Pros. Atty., and Don Langston, Asst. Atty. Gen., Little Rock, Ark., for appellants, Joe Purcell, Atty. Gen., and Richard B. Atkisson, Pros. Atty., Little Rock, Ark., on the brief.

Michael Meltsner, New York City, for appellee, Jack Greenberg, New York City, John W. Walker and Norman Chachkin, Little Rock, Ark., and Anthony G. Amsterdam, Philadelphia, Pa., on the brief.

Before MATTHES, GIBSON and LAY, Circuit Judges.

MATTHES, Circuit Judge.

Captain Henry Beck, Superintendent of the Pulaski County Penal Farm and Clint Cavin, surety,[1] have appealed from the order of the United States district court granting Robert Winters relief in this habeas corpus proceeding. The history of the litigation giving rise to this appeal is fully and accurately reported in the district court's opinion in Winters v. Beck, 281 F.Supp. 793 (E.D.Ark. 1968). A brief resume of the relevant facts will suffice for the purpose of this opinion.

Winters, appellee, was tried and convicted without the assistance of counsel in the Municipal Court of Little Rock, Arkansas, for obscene and lascivious conduct proscribed by Little Rock City Ordinance No. 25–121. He received the maximum punishment of 30 days in jail and a fine of $250, to which was added $4 costs. Being an indigent and unable to pay the fine, he was sentenced to the Pulaski County Penal Farm for a total of 284 days as provided by Ark.Stat.Ann. § 19–2416 (1968 Repl. Vol.).[2]

After appellee had exhausted his state remedies through habeas corpus proceedings, Winters v. Beck, 239 Ark. 1151, 397 S.W.2d 364 (1965), cert. denied, 385 U.S. 907, 87 S.Ct. 207, 17 L.Ed.2d 137 (1966) (Mr. Justice Stewart dissenting), he filed a petition for habeas relief in the United States district court on November 8, 1966. Judge Young initially dismissed appellee's petition on the ground that petitioner was at liberty on bail and not under such restraint as was necessary to require consideration of the petition. On appeal we remanded for a rehearing on the merits in conformity with the teachings of the Supreme Court in Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). On remand, Judge Young held a hearing and in a soundly-reasoned opinion found that "the interaction of the 'dollar-a-day' statute of Arkansas with a $254 fine plus a 30-day jail sentence constituted a 'serious offense,' and the failure of the trial court to notify petitioner of his right to the assistance of counsel and offer him counsel if he was unable financially to retain counsel rendered the judgment of conviction and sentence constitutionally invalid." 281 F.Supp. at 801–802.

On this appeal, appellants in their brief again questioned appellee's standing to seek habeas relief, their position being that since he was at liberty on bond when he filed his petition in the United States district court, he was not in custody within the meaning of 28 U.S.C. § 2241, and consequently the writ was not available to him. Our remand of the district court's first order, motivated by Jones v. Cunningham, supra,

---

1. Appellant Clint Cavin is surety on Winters' appearance bond, and apparently was named as a respondent in the habeas corpus proceeding on the theory that Winters is in the technical custody of Cavin. He did not file a responsive pleading in the district court.

2. The statute under which appellee was committed provides in effect that prisoners confined in the county jail or city prison, by sentence of the mayor or police court, for a violation of a city ordinance may, by ordinance, be required to work out the amount of all fines, penalties, forfeitures and costs at the rate of $1 per day. Little Rock Ordinance No. 25–121, and § 19–2416, Ark. Stat.Ann., are reproduced in the district court's opinion.

disposed of this issue. In oral argument the Assistant Attorney General of Akansas with candor conceded there was no merit to the lack of standing issue and expressly abandoned this contention.

■ The clear-cut question we must decide is whether the district court was correct in holding that appellee was deprived of his Sixth Amendment right to assistance of counsel as applied to the states through the due process clause of the Fourteenth Amendment. We subscribe to Judge Young's conclusion and affirm.

The Attorney General of Arkansas argues for a reversal on the premise that the question of whether an indigent state defendant is entitled to the assistance of counsel is one "which traditionally in the American system of government belongs to the Legislatures, not to the courts." We are reminded that Arkansas has recognized its responsibility by enacting legislation providing "free counsel" for indigent defendants in felony cases,[3] Ark. Stat.Ann. § 43–1203 (1964 Repl. Vol.); that the Supreme Court of Arkansas has held not only that appellee Winters was not entitled to counsel, but has expressly rejected the concept that an indigent defendant charged with a misdemeanor should have the assistance of counsel. Cableton v. State, 243 Ark. 351, 420 S.W. 2d 534 (1967). The *Cableton* Court was obviously influenced by practical considerations, stating in part: "[T]here are more justices of the peace in Arkansas than there are resident practicing lawyers and that there are counties in which there are no practicing lawyers. The impact of such a rule would seriously impair the administration of justice in Arkansas and impose an intolerable burden upon the legal profession." *Id.* at 538–539.

We are fully cognizant of and appreciate appellants' concern over the federal government intruding into problems which are primarily relegated to the states for resolution. The Supreme Court recognized the importance of comity between the federal and state courts in Ker v. California, 374 U.S. 23, 31, 83 S.Ct. 1623, 1629, 10 L.Ed.2d 726 (1963):

> "*Mapp* sounded no death knell for our federalism; rather, it echoed the sentiment of Elkins v. United States, [364 U.S. 206, 221, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1961)] that 'a healthy federalism depends upon the avoidance of needless conflict between state and federal courts' by itself urging that '[f]ederal-state cooperation in the solution of crime under constitutional standards will be promoted, if only by recognition of their now mutual obligation to respect *the same fundamental criteria* in their approaches.'"

Accord, Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968).

■ The sum of appellants' argument is predicated on the pronouncement of the Supreme Court of Arkansas that "[a]ny change in the law of Arkansas, after certiorari was denied in the *Winters* case should either come through legislative enactment or by an express decision of the United States Supreme Court." 420 S.W.2d at 537–538.[4]

■ Appellants are correct in suggesting that the Supreme Court of the United States has not expressly extended the Sixth Amendment right to assistance of

---

3. Apparently, the legal profession in Arkansas recognizes the need for more effective legislation in this area. The Arkansas Bar Association's Special Committee on the Defense of Criminal Indigents is preparing proposed legislation that would establish a public defender— appointed counsel system in Arkansas not limited to felony cases. See Sizemore, Defense of Accused Indigents in Arkansas: New Hope or More of the Same, Arkansas Lawyer, Oct., 1968, at 6.

4. Appellants have placed undue reliance upon denial of certiorari in Winters v. Beck, supra. The sole significance of a denial of a petition for writ of certiorari is discussed at some length in Maryland v. Baltimore Radio Show, 338 U.S. 912, 917–918, 70 S.Ct. 252, 94 L.Ed. 562 (1950). "[S]uch a denial carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review." Id. at 919, 70 S.Ct. at 255.

counsel to misdemeanor cases. We are firmly convinced, however, from the rationale of the decisions of the Supreme Court that the fundamental right to counsel extends to a situation where, as here, the accused has been found guilty of an offense, which has resulted in imprisonment for approximately nine and one-half months.

The Supreme Court in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in holding that the Sixth Amendment guarantee of the right to assistance of counsel is applicable to the states through the Fourteenth Amendment, proclaimed: "[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." Id. at 344, 83 S.Ct. at 796.[5]

■ Appellants seem to regard the Gideon opinion as limiting the application of the Sixth Amendment to offenses which are characterized as felonies. We are not persuaded that the Gideon Court intended to circumscribe the application of its decision to such narrow confines. The Court did not draw a line between felonies and any and all misdemeanors. Indeed, consideration of the opinion in context leads us to conclude that the right to counsel must be recognized regardless of the label of the offense if, as here, the accused may be or is subjected to deprivation of his liberty for a substantial period of time.[6]

■ It should be remembered that the Sixth Amendment makes no differentiation between misdemeanors and felonies. The right to counsel is not contingent upon the length of the sentence or the gravity of the punishment. Rather, it provides that the guarantee extends to "all criminal prosecutions." Furthermore, we note that the phrase "all criminal prosecutions" applies not only to the right to counsel but also to the right to a jury trial. Logically the phrase should be accorded the same meaning as applied to both protections. Thus we believe significant the Supreme Court's pronouncements in cases involving the jury trial guarantee.

In Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed. 491 (1968), the Supreme Court held that "trial by jury in criminal cases is fundamental to the American scheme of justice," and that the Fourteenth Amendment guarantees a right of jury trial in all state criminal cases "which—were they tried in a federal court—would come within the Sixth Amendment's guarantee." The Court concluded that a jury trial is guaranteed in all "serious offenses" but does not extend to "petty crimes." The Duncan Court, however, declined to settle the exact location of the line between petty offenses and serious crimes. It did hold that on the facts before it, where appellant had been sentenced to 60 days in jail and fined $300 for commission of simple battery, a misdemeanor punishable up to two years, he was entitled to a jury trial.

In Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed. 522 (1968), the Court reiterated its holding in Duncan

---

5. Gideon expressly overruled Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), in which the Supreme Court refused to hold that the Sixth Amendment right to counsel extended to the states through the Fourteenth Amendment. Betts did recognize, however, that where there existed special circumstances, the right to counsel became fundamental and essential so as to require applicability of the Sixth Amendment to the state through the due process clause of the Fourteenth Amendment.

6. Although there is no limitation on the right to appointed counsel in the majority

opinion, Mr. Justice Harlan, in a concurring opinion, comments: "Whether the rule should extend to all criminal cases need not now be decided." Id. at 351, 83 S.Ct. 792, at 801. That the reach of Gideon is not altogether clear is evidenced by two dissenting opinions of Justices in denials of certiorari in Winters v. Beck, 385 U.S. 907, 87 S.Ct. 207 (1966) and DeJoseph v. Connecticut, 385 U.S. 982, 87 S.Ct. 526, 17 L.Ed.2d 443 (1966). In those opinions the Justices call for the Court to clarify its holding in Gideon.

and held that the right to jury trial extends to serious criminal contempts and that denial of a jury trial to appellant, who was sentenced to imprisonment for two years, was constitutional error. Conversely, in Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), the Court did not extend the right to an offense it found petty. *Dyke* involved contemnors who were sentenced under a Tennessee criminal contempt statute that provided for a maximum penalty of 10 days in jail and a fine of $50. Relying on its earlier decision in Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1537, 16 L.Ed.2d 629 (1966), where it held that a six-month sentence is short enough to be "petty," the Court reasoned that the petitioners in this case were charged with a "petty offense" and had no federal constitutional right to jury trial.

Equally significant, we believe, is the Court's recent declaration that the right to assistance of counsel extends to juvenile proceedings "which may result in commitment to an institution in which the juvenile's freedom is curtailed." In re Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).[7]

The Fifth Circuit also has been faced with the question of how far the right to counsel extends and has refused to formulate a rigid rule which would either extend the protection to all criminal cases or limit it only to felonies. Rather, in adopting a broad view it expressly ruled that the safeguard extends to misdemeanor cases, but also recognized that there are some offenses where one would not be entitled to the services of an attorney at the expense of the state.[8]

In Harvey v. Mississippi, 340 F.2d 263 (5th Cir. 1965), the defendant, without being advised that he was entitled to assistance of counsel, pled guilty to, was convicted of and sentenced to the maximum punishment of a $500 fine and 90 days in jail for possession of whiskey, a misdemeanor in Mississippi. Noting that such a plea had "grievous consequences," the court held that under the facts of the case, defendant was unconstitutionally convicted because of the failure to advise him that he was entitled to be furnished counsel.[9]

In MacDonald v. Moore, 353 F.2d 106 (1965) the Fifth Circuit reaffirmed its position in *Harvey*. There appellant was charged (1) with illegal sale of gin, and (2) with illegal possession of whiskey and gin, both misdemeanors under Florida law. She pled guilty and was sentenced to 6 months in jail or $250 fine on each charge. Because the facts in the case were so similar to those in *Harvey*, the court stated that it was required to hold that appellant was entitled to assistance of counsel.

Recently, the Fifth Circuit again dealt with the question and expressly held that under the Sixth and Fourteenth Amend-

---

7. The Court stated:
   "The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it." *Id.* at 36, 87 S.Ct. 1428, at 1448.

8. In MacDonald v. Moore, *infra*, the court commented:
   "It seems unlikely that a person in a municipal court charged with being drunk and disorderly, would be entitled to the services of an attorney at the expense of the state or the municipality. Still less likely is it that a person given a ticket for a traffic violation would have the right to counsel at the expense of the state."

9. The court quoted from Evans v. Rives, 75 U.S.App.D.C. 242, 126 F.2d 633, 638 (1942) approvingly:
   "It is * * * suggested * * * that the constitutional guaranty of the right to the assistance of counsel in a criminal case does not apply except in the event of 'serious offenses.' No such differentiation is made in the wording of the guaranty itself, and we are cited to no authority, and know of none, making this distinction. * * * And so far as the right to the assistance of counsel is concerned, the Constitution draws no distinction between loss of liberty for a short period and such loss for a long one."

ments, right to counsel extends to misdemeanor cases. Goslin v. Thomas, 400 F.2d 594 (1968).[10] Defendant asserted that he had been denied counsel in four Louisiana misdemeanor proceedings. In the last proceeding, defendant had been sentenced to jail for one year.

■ Based on the rationale of the foregoing authorities,[11] we conclude that the right to counsel cannot be dependent upon the mere arbitrary label that a state legislature attaches to an offense.[12]

■ We find it unnecessary to decide that all indigents have the right to assistance of counsel in *all* misdemeanor prosecutions, no matter how trivial may be the consequences. Whether a person accused of an offense labeled as a misdemeanor is entitled to counsel must be resolved upon proper consideration of all circumstances relative to the question. In addition to the financial status of the accused, the punishment that may be imposed if he is found guilty is certainly a vital factor. The trial court should fully explore all of the relevant circumstances, and if it is determined that counsel should be provided, the accused must be so informed. Unless he intelligently and knowingly waives the right, counsel should be furnished. We go no further in attempting to delineate the guidelines.[13]

10. The lower court's opinion, Petition of Thomas, 261 F.Supp. 263 (W.D.La.1966), held that under *Harvey* and *MacDonald*, *Gideon* must be applied to all criminal cases. The Court of Appeals for the Fifth Circuit stopped short of this holding, stating that the only question was whether the right to counsel under the Sixth and Fourteenth Amendments extends to state misdemeanor cases.

11. Other federal cases rejecting the misdemeanor-felony dichotomy and holding that the Sixth Amendment right to assistance of counsel extends to misdemeanor prosecutions are: Brinson v. Florida, 273 F. Supp. 840 (S.D.Fla.1967); Rutledge v. City of Miami, 267 F.Supp. 885 (S.D. Fla.1967); Arbo v. Hegstrom, 261 F. Supp. 397 (D.Conn.1966). *See* Stubblefield v. Beto, 399 F.2d 424, 425 (5th Cir. 1968) (dissenting opinion); Wilson v. Blabon, 370 F.2d 997 (9th Cir. 1967). See also the following articles: Carlson, Appointed Counsel in Criminal Prosecutions: A Study of Indigent Defense, 50 Iowa L.Rev. 1073 (1965); Kamisar, Betts v. Brady Twenty Years Later: The Right to Counsel and Due Process Values, 61 Mich.L.Rev. 219 (1962); Kamisar and Choper, The Right to Counsel in Minnesota: Some Field Findings and Legal-Policy Observations, 48 Minn.L.Rev. 1 (1963); Milroy, Court Appointed Counsel for Indigent Misdemeanants, 6 Ariz.L.Rev. 280 (1965); Comment, The Right to Counsel for Misdemeanants in State Courts, 20 Ark.L. Rev. 156 (1966).

12. As Mr. Justice Stewart pointed out in his dissent in the Court's denial of certiorari in Winters v. Beck, supra, some misdemeanors in Arkansas are punishable by up to three years' imprisonment. Ark. Stat.Ann. § 41–805 (1964 Repl. Vol.).

13. While we do not formulate and lay down an arbitrary, mechanical rule which could automatically and simply be applied in every case to determine whether the right to assistance of counsel attaches, we do point out some of the various approaches and suggestions promulgated by courts, commissions and statutes. In Brinson v. Florida, 273 F.Supp. 840 (S.D.Fla.1967), the court constructed what it believed to be the proper test: "The right to assistance of counsel is determined by the seriousness of the offense, measured by the gravity of the penalty to which the defendant is exposed on any given violation." *Id.* at 843. The court further stated: "I hold that the minimum offense for which counsel must be provided is one which carries a possible penalty of more than six months imprisonment, which is the line of demarcation drawn in federal practice." *Id.* at 845. The Criminal Justice Act of 1964, 18 U.S.C. § 3006A, provides that appointed counsel in federal courts shall be afforded to indigents in all felony and misdemeanor cases other than petty offenses. The Act defines petty offenses as those punishable by not more than six months imprisonment or $500 fine or both. 18 U.S.C. § 1. The ABA's project on Minimum Standards for Criminal Justice in its tentative draft on Standards Relating to Providing Defense Services § 4.1 (1967) has recommended the following rule:

"Counsel should be provided in all criminal proceedings for offenses punishable by loss of liberty, except those types of offenses for which such punishment

In summary, it is abundantly clear that the district court correctly decided the question at issue. The order vacating the judgment and sentence is affirmed.

is not likely to be imposed, regardless of their denomination as felonies, misdemeanors or otherwise."

In the Challenge of Crime in a Free Society: A Report by the President's Commission on Law Enforcement and Administration of Justice (1967), the commission recommended:

"The objective to be met as quickly as possible is to provide counsel to every criminal defendant who faces a significant penalty, if he cannot afford to provide counsel himself. This should apply to cases classified as misdemeanors as well as to those classified as felonies." *Id.* at 150.

In its summary, however, the commission stated that "traffic and similar petty charges" are excluded from this recommendation. *Id.* at viii.