Franklin J. NEWELL

v.

STATE of Maine et al.

Supreme Judicial Court of Maine.

June 1, 1971.

Peter A. Anderson, Bangor, Thomas N. Tureen, Calais, for plaintiff.

Clayton N. Howard, Asst. Atty. Gen., Augusta, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WEATHERBEE, Justice.

Petitioner was convicted in one of our District Courts of the offenses of intoxication in a public place and breaking arrest. Both offenses are misdemeanors. The first charge contained an allegation of prior convictions and carried a possible punishment of a fine of not more than $60.00 or imprisonment for not more than 90 days, or both. The punishment for the second charge may be a fine of not more than $1,000 or imprisonment of not more than 11 months. This petition for the statutory writ of post-conviction habeas corpus attacks the validity of these convictions on the ground that the presiding Judge did not inform him that if he was indigent counsel would, at his request, be appointed to assist him.

Petitioner was a man of 28 with little formal education but "good common sense". He had had considerable experience in the courts, having been convicted of both felonies and misdemeanors. He was at that time unemployed and had no resources with which to employ counsel.

The Judge read and explained the complaints, satisfied himself that the Petitioner understood the charges and told the Petitioner that he had the right to have an attorney if he wished one. Petitioner answered that he did not want an attorney. The Judge did not advise Petitioner that if he desired counsel and was unable to afford one, counsel would be appointed to represent him.

District Court Criminal Rule 44 reads:

"If the defendant in a misdemeanor proceeding appears in the District Court without counsel, the court shall advise him of his right to counsel, and may assign counsel to represent him at every stage of the proceeding unless he elects

to proceed without counsel or has sufficient means to employ counsel."

This Judge makes a practice of appointing counsel for indigent persons charged with misdemeanors when he feels that exceptional circumstances require it. His policy was much like that approved by the United States Supreme Court under the Betts v. Brady rule (316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942)) until Gideon v. Wainwright, infra. Although he did not know Petitioner's financial situation on that particular day, he was well acquainted with Petitioner and considered that he was capable of proceeding without counsel.

Petitioner pleaded guilty to both charges and received two sentences of 3 months each to run consecutively. Before completing service of the first sentence (public intoxication) he brought this petition for the statutory writ of habeas corpus. There being no significant issues of fact, the Justice to whom the petition was assigned ordered the matter reported to this Court for the determination of the sole issue of constitutional deprivation.

■ While Petitioner testified that he told the Judge that he didn't want an attorney because he couldn't afford one and because the State's evidence was so strong, he also said that if he could have had an attorney furnished by the State he probably would have accepted the attorney. That his election not to have an attorney did not constitute a knowing understanding waiver does not seem to merit lengthy discussion. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Petitioner did not know whether or not an indigent person charged with a misdemeanor in Maine had a right to appointment of counsel. It remains for this decision to inform him.

Both the Constitution of the United States (Sixth Amendment)[1] and that of the State of Maine (Art. I, § 6)[2] guarantee the right of assistance by counsel in criminal prosecutions.

The assistance of counsel that these constitutions originally promised, however, was that of privately retained counsel which had been denied under English law and not that of court appointed counsel furnished by the State to persons too poor to provide their own counsel. The concept that the constitutional guarantees of due process and right to counsel may be denied when a defendant is denied the assistance of counsel not by governmental negation but by his own economic circumstances is a relatively recent one. In fact, under the English law, at the time of our independence a prisoner was not entitled to be heard by counsel on the general issue of not guilty on any felony charge except treason and it was this oppressive governmental action that the framers of the constitution were determined should not gain foothold here.

At the time of the adoption of the federal constitutions and of the amendments with which we are now concerned the citizens of most of our states had included in their own constitutions provisions concerning right to assistance of counsel in criminal prosecutions. These, however, as was pointed out by the opinion of Justice Roberts in Betts v. Brady, were "intended to do away with the rules which denied representation * * * by counsel in criminal prosecutions, but were not aimed to compel the state to provide counsel for a defendant". 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); State v. Waters, 39 Me. 54 (1854); 3 Story's Com. on Cons. § 1787; 4 Black's Com. 356.

When we became a sovereign state in 1820 we adopted the language of the Massachusetts constitution concerning right to counsel but it was not until 1870 that our

---

1. Constitution of the United States, Amendment VI. "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

2. Constitution of the State of Maine, Art. I, § 6. "In all criminal prosecutions, the accused shall have a right to be heard by himself and his counsel, or either, at his election; * * *"

legislature required the *appointment of counsel* for a defendant in *any* criminal case, and then only for defendants charged with capital crimes. P.L.1870, chap. 87.

This statutory situation remained unchanged here until 1949 when the Legislature *authorized* the Superior Court to appoint counsel for impoverished people charged with *any* offenses—but empowered it to order compensation only in case of felonies. P.L.1949, chap. 100. During these years and to this day, (except for Duncan v. Robbins, 159 Me. 339, 193 A.2d 362 (1963), a coram nobis attack on a felony conviction) our Court was never called upon to apply our own guarantee of right to counsel to the situation of an impoverished defendant, but it seems safe to analogize from the Court's language in an 1854 case that any concept that the state should give an indigent defendant charged with a non-capital felony any assistance at state expense was still many decades away. There the refusal of a presiding Justice to grant an indigent felony defendant's request for compulsory process to obtain witnesses for his defense was upheld. The Court held that the defendant had no right under the constitution to compulsory process and added, by way of dictum, that even the then existing statute which promised a person charged with a *capital* offense compulsory "process to summon his witnesses at the expense of the state, * * *" meant only that the defendant did not have to pay the Clerk for the paper—it did not authorize the payment of costs of serving the process and of witness fees, although the practice had been for the county attorney to add them to his bill of costs, in capital cases. The argument of the Attorney General, printed with the opinion, was probably representative of the thought of that day. He said:

"No visionary reformer has yet gone to the length of holding it to be the duty of society to furnish, at its own cost, means of defence to those charged with violating its laws. It has been thought enough, in this country, to provide that

such means *shall not be withheld*". (Emphasis added) State v. Waters, supra.

In State v. Doherty, 60 Me. 504 (1872) this Court had occasion to consider the meaning of the term "due process of law". The Court said:

"The expressions 'due process of law' and 'law of the land' have the same meaning. These provisions have their origin in *Magna Charta,* the keystone of the arch of the British constitution. They were wrested from the king as restraints upon the prerogatives of the crown, and were incorporated into the constitution of the United States, and the constitutions of many of the Federal States, as a safeguard against the encroachment upon these inherent rights of the people by congress or the State legislatures. When applied to proceedings in criminal cases, the expression 'due process of law,' or 'the law of the land,' means that no person shall be deprived of life, liberty, property, or privileges, without indictment or presentment by good and lawful men, selected, organized, and qualified, in accordance with some preexisting law, and a trial by a court of justice, according to the regular and established course of judicial proceedings. Coke, 2 Inst. 46; 2 Kent, Com. 13; Story on Const. 661.

\* \* \* \* \* \*

The 'law' intended by the constitution is the common law that had come down to us from our forefathers, as it existed and was understood and administered when that instrument was framed and adopted. The framers of the constitution, and the people who adopted it, appreciated the protection afforded to life, liberty, property, and privileges, by the common law, and determined to perpetuate that protection by making its benign provisions in this respect the corner-stone principle of the fundamental law."

It seems clear that at the time of the adoption of our constitutional guarantees the right to counsel was not, in either state or federal courts, understood to include the

right to appointment of counsel for an indigent defendant and that due process contemplated a regular and established course of judicial proceedings in which an indigent defendant was required to defend himself as best he could.

In short, we view the present enlightened and humane position of the courts as to a destitute person's right to counsel to have resulted from a gradual process of growth resulting from an increased understanding of sociological principles and an enhanced desire that our courts deal fairly with persons charged with crimes. Our present concept of judicial fair play little resembles that of our courts in the early decades of the 19th Century.

We must add that we know that during this century, in spite of the absence of statutory or decisional fiat, individual Justices have almost uniformly felt a moral and social obligation to furnish counsel to indigent persons charged with felonies in the Superior Courts. Their practice of making informal appointments, and the willingness of members of the bar to perform such unpaid public service, long preceded Gideon v. Wainwright and doubtless explain the absence of this issue before the Courts of Maine until recently.

The course of judicial thinking on the subject in this century can be traced through federal decisions, four of which present the bare outline of the evolution of federal judicial reasoning.

In Powell v. Alabama, supra, the United States Supreme Court held that in a capital case, where the defendant is unable to employ counsel and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary prerequisite of due process of law.

In 1938, in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, the Court held that the Sixth Amendment withholds from Federal Courts in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel. The offense charged in *Johnson* was a felony.

However, in Betts v. Brady, supra, the United States Supreme Court held that while under some special circumstances the want of counsel may result in a conviction so wanting in fundamental fairness as to offend the Fourteenth Amendment's guarantees, federal due process does not require appointment of counsel in *all* cases.

It was not until 1963 that Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 announced the principle that appointment of counsel for an indigent defendant is a fundamental right under the Sixth Amendment made obligatory upon the states by the Fourteenth Amendment. The Court was then speaking concerning Petitioner's conviction of a felony.

Up until now the United States Supreme Court has given no specific indication that it intended the principles of *Gideon* to extend to needy persons charged with misdemeanors. On four occasions it has denied certiorari to cases which would have presented the issue: Winters v. Beck, 385 U.S. 907, 87 S.Ct. 207, 17 L.Ed.2d 137 (1966); Cortinez v. Flournoy, 385 U.S. 925, 87 S.Ct. 314, 17 L.Ed.2d 222 (1966); DeJoseph v. Connecticut, 385 U.S. 982, 87 S.Ct. 526, 17 L.Ed.2d 443 (1966); Hendrix v. City of Seattle, 397 U.S. 948, 90 S.Ct. 969, 25 L.Ed.2d 129 (1970). The absence of a specific pronouncement left the States in some uncertainty as to federal constitutional requirements.

Our Maine Legislature, intending to insure our Courts' compliance with *Gideon,* promptly enacted P.L.1963, Chap. 273 which *required* both the Justices of the Superior Court and Judges of the new District Court system to assign counsel for indigents charged with felonies and *per-*

*mitted* it (without compensation) in cases of misdemeanors.

In 1965 there was enacted Chap. 352, §§ 1 and 2 of which authorize—but do not require [3]—the appointment of counsel in both misdemeanors and felonies and permit the Justices and Judges to order payment for such services.

M.R.Crim.P., Rule 44 which in 1965 *required* such appointment of counsel in felony charges was in 1967 amended to *permit* [4] such appointment in misdemeanors. Glassman, Maine Practice, § 44.1 ff. At the same time Rule 44 was added to the District Court Criminal Rules—permitting—but not requiring—appointment of counsel in the District Courts.[5]

At the time of Petitioner's conviction, then, the action of the Judge now under examination violated no statute, rule or clear judicial fiat of the Court of last resort of either state or nation.

The several states which have attempted to interpret *Gideon's* holdings, and the requirements of their own constitutions, as they affect needy persons charged with misdemeanors have reached varied results.

Some have found that there is no absolute right to appointment of counsel for defendants charged with less-than-felony violations—Hendrix v. City of Seattle, 76 Wash.2d 142, 456 P.2d 696 (1969), cert. denied, 397 U.S. 948, 90 S.Ct. 969, 25 L.Ed.2d 129 (1970); Cableton v. State, 243 Ark. 351, 420 S.W.2d 534 (1967).

Several states feel required to appoint counsel for needy persons charged with any criminal offense (or at least, where the defendants may be, if convicted, deprived of their liberties): Application of Stevenson, Or., 458 P.2d 414 (1969); In re

Johnson, 62 Cal.2d 325, 42 Cal.Rptr. 228, 398 P.2d 420 (1965); Bolkovac v. State, 229 Ind. 294, 98 N.E.2d 250 (1951); People v. Mallory, 378 Mich. 538, 147 N.W.2d 66 (1967); Hunter v. State, Okla.Crim. App., 288 P.2d 425 (1955); People v. Witenski, 15 N.Y.2d 392, 259 N.Y.S.2d 413, 207 N.E.2d 358 (1965).

The courts of several other states have concluded that counsel must be provided in cases of "serious" misdemeanors only, some of them fixing the distinction between "petty" and "serious" on a basis of whether the possible penalty exceeds six months imprisonment. Burrage v. Superior Court, 105 Ariz. 53, 459 P.2d 313 (1969); State v. Morris, 275 N.C. 50, 165 S.E.2d 245 (1969); State ex rel. Plutshack v. State Department of Health and Social Service, 37 Wis.2d 713, 155 N.W.2d 549 (1968); Wright v. Denato, Iowa, 178 N.W.2d 339 (1970).

See also Beck v. Winters, (8th Cir. 1969) 407 F.2d 125; McDonald v. Moore, (5th Cir. 1965) 353 F.2d 106; Evans v. Rives, (D.C. Cir. 1942), 75 U.S.App.D.C. 242, 126 F.2d 633.

Following *Gideon,* the Congress enacted the United States Criminal Justice Act of 1964 (18 U.S.C.A. § 3006A) which required appointment of counsel in the federal courts for an indigent person "charged with a felony or a misdemeanor, *other than a petty offense* * * *.*" (Emphasis added). 18 U.S.C.A. § 1(3) defines a petty offense as a misdemeanor the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both.

On January 27, 1971 the United States Supreme Court issued its Order Prescribing Rules of Procedure for the Trial of

---

3. 4. The deletions of the *requirement* of such appointment reflects no reversal in policy but only that neither statute nor rule is needed to supplement the clear pronouncement in *Gideon* as to *felonies.*

5. Rule 44. If the defendant in a misdemeanor proceeding appears in the District Court without counsel, the court shall advise him of his right to counsel and *may* assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or has sufficient means to employ counsel. Added eff. Dec. 31, 1967. (Emphasis added)

Minor Offenses before Magistrates. It requires appointment of counsel unless waived, for indigent persons charged with "minor offenses" other than "petty offenses". The procedure it directs for arraignment of persons charged with "petty offenses" pointedly contains no demand that they be informed that, if they are needy and wish it, counsel will be appointed to assist them. 8 Cr.L.Rptr. 3091. Presumably the Court was adopting the statutory definition of petty offense found in 18 U.S.C.A. § 1(3).

The United States Supreme Court has recently granted certiorari in Argersinger v. Hamlin, Fla., 236 So.2d 442 (1970), which will present that court finally with the issue which now faces us and we may expect it to be argued at the October Term.

In the meantime, we are called upon to determine the extent of Petitioner's rights under the federal constitution as well as under our own.

With our deepening appreciation of the principles of the social sciences and of human values, our courts' concepts of judicial fair play have steadily evolved. The 18th Century declaration that in this nation the state may never deny to a man charged with crime the assistance of an attorney in his defense was doubtless welcomed as a landmark in the cause of personal liberty but more than a century passed before this right became meaningful to the destitute person charged with a felony.

The expansion of our own local sense of obligation is reflected in the appearance within this decade of legislation and rules permitting, although not requiring, appointment of counsel for needy persons charged with misdemeanors in both our Superior and District Courts and in a growing practice by the Courts of making such appointments in appropriate cases.

█ We are convinced that the time has come when due process demands that we abandon the felony-misdemeanor distinction as a basis for appointment of counsel and construe our own constitution to require appointment of counsel for needy persons charged with serious misdemeanors, unless waived.

Our statutes define "felony" as including every offense punishable by imprisonment in the State Prison. 15 M.R.S.A. § 451. We know that the distinction between misdemeanors and felonies is often only a convenient method of classification with little real significance and that in many instances the maximum possible confinement in a County Jail provided by a statute for some misdemeanors may be only 30 days shorter than the minimum period of imprisonment in our State Prison provided for most felonies. Using the category titles of felony and misdemeanor in determining right to counsel is particularly unconvincing in this state where 34 M.R.S.A. § 802 provides that any male between the age of 17 and 26, upon conviction of any misdemeanor which is punishable by imprisonment in the county jail (as most are), may be committed to the Men's Correctional Center for an indeterminate period which can last as long as three years. 34 M.R.S.A. § 853 makes a similar provision for sentence to the Women's Correctional Center of women between the ages of 17 and 40. These people, although charged with misdemeanors, face possible confinement for longer terms than can be imposed on convictions of at least one felony. 17 M.R.S.A. § 3152.

The defense of many misdemeanor charges may demand professional assistance as urgently as that of many felony trials and may result in loss of liberty. While no loss of liberty can be considered trivial, it seems to us that the individual's need for legal assistance must be weighed carefully against society's ability reasonably to furnish it.

We know that during this century the legislature has created a great many new misdemeanor offenses which are of rela-

tively minor nature, such as some traffic and fish and game violations, for example. Many thousands of such violations come before our District Courts yearly and we are convinced that to extend the obligation to provide counsel to minor charges of these types would impose a presently insupportable burden upon the court system and the bar with a seriously adverse effect upon all litigants' rights to prompt attention to their problems in the courts. No right is absolute and a fair standard must be found upon which to balance the public interests and the individual's rights under due process.

We conclude that this balance can best be achieved by distinguishing between petty and serious misdemeanors using as a satisfactory guideline the rules that the United States Supreme Court saw fit to prescribe only three months ago. We consider that the distinction between "petty" and "serious" satisfies the demands of due process and that it serves a proper governmental purpose and achieves a reasonable balance of the public interests and the individual's rights to the satisfaction of the equal protection clause.

■ Therefore, we hold that all indigent persons who are without attorneys and who are facing criminal charges which might result in the imposition of a penalty of imprisonment for a period of more than six months or a fine of more than $500 or both (including those persons subject to potential confinement in either the Men's or the Women's Correctional Center) must be informed by the Court of their right to appointed counsel and must have such counsel appointed unless they waive this right.

■ Petitioner, himself, was convicted of two offenses. The first, public intoxication (the punishment for which he has now completed), carries a possible maximum penalty which, as to Petitioner, is less than the standard of the rule we have announced (inasmuch as Petitioner was above the age at which he would be eligible to receive an indeterminate sentence to the Men's Correctional Center under 34 M.R.S.A. § 802).

■ However, the maximum penalty for the other offense, breaking arrest, exceeds that standard.

Petitioner's conviction of this offense of breaking arrest is ordered set aside and he is ordered returned to the District Court, District Four, Division of Northern Washington, for determination as to indigency, for instruction as to right to counsel if appropriate, and to plead anew.