STATE OF MAINE *vs.* HUGH DOHERTY.

*Superior court—criminal jurisdiction of. Constitutional law.*

The criminal jurisdiction of the superior court for the county of Cumberland was repealed by Pub. Laws of 1870, c. 174, which took effect Feb. 1, 1871; and was restored by Pub. Laws of 1872, c. 1,* which took effect Jan. 13, 1872.

An indictment found at the May term, 1872, of said court, by a grand jury drawn on venires, issued by the clerk thereof, on July 22, 1871, and impaneled and sworn at the following September term, was void.

And such indictment was not made valid by Pub. Laws of 1872, c. 1.

So much of Pub. Laws of 1872, c. 1, as purported to confirm and make valid the doings of said court in relation to indictments found by that grand jury, is in contravention of the constitution of the U. S., Art. XIV, § 1, and of the constitution of this State, Art. I, § 6.

ON REPORT.

INDICTMENT for maintaining a nuisance.

The respondent submitted the following motion in writing, verified by oath.

That the grand jurors by whom the indictment was found and returned, were not lawfully selected, impaneled, and sworn, and duly qualified to act as such grand jurors in this.

That chapter 216 of the Pub. Laws of the State of Maine, of the year 1868, entitled ' an act to enlarge the jurisdiction of the superior court in the county of Cumberland,' which said act was the only law that conferred criminal jurisdiction upon said superior court, prior to Jan. 13, 1872, was repealed by act of the legisla-

---

*PUB. LAWS 1872, c. 1, SECT. 1. Chapter 216 of Pub. Laws of 1868, entitled 'an act to enlarge the jurisdiction of the superior court in the county of Cumberland,' is hereby reënacted and declared to be in full force and effect; and the criminal jurisdiction conferred upon the superior court for the county of Cumberland, by the above-named act, is hereby affirmed, and all its doings in criminal cases, which have been in accordance with the provisions of said act, are hereby confirmed and declared to be legal and valid.

SECT. 2. This act shall take effect when approved.

(Approved Jan. 13, 1872.)

ture of said State of Maine, approved March 24, 1870, entitled ' an act to repeal the acts consolidated in the Revised Statutes of the year one thousand eight hundred and seventy;' which said last-named act took effect on and after Feb. 1, 1871, prior to the day when the only pretended venires for said grand jurors, issued out of the clerk's office of said superior court, and prior to the term of said superior court, which was held on the first Tuesday of September, 1871. At which said September term of said court, all the pretended venires for said grand jurors were returnable, and said grand jurors were pretended to be impaneled and sworn, and have not been impaneled and sworn from that day hitherto. And during all the said time, from said first day of February, 1871, to the thirteenth day of January, 1872, said superior court had no criminal jurisdiction, and no lawful authority to issue venires, for said grand jurors, and impanel and swear said pretended grand jury, nor have any other venires, issued from said superior court for grand jurors, nor has any other grand jury been impaneled and sworn from said first day of February, 1871, hitherto.

And it was by a pretended grand jury, thus selected, impaneled, and sworn at said September term of said superior court, that said indictment was found.

And the act of the legislature of said State approved Jan. 13, 1872, entitled ' an act relating to the superior court for Cumberland county,' so far as it was intended to apply to said jurors, was in violation of § 7, Art. I, of the constitution of Maine, and of other provisions of said constitution.

And said act of Jan. 13, 1872, so far as it was intended to legalize and make valid the selection, impaneling and swearing said grand jurors, and doings of said pretended grand jury, was in violation of the constitution of the United States, Art. I, § 9, p. 3, and Art. of Amendment XIV, p. 1, and further provisions of said constitution.

And this he is ready to verify, by the record of this court, and by a certified copy of said act of the legislature.

To sustain the allegation that c. 216 of the Pub. Laws of 1868,

which conferred criminal jurisdiction upon superior court, was repealed, the respondent introduced, without objection, a copy, certified by the secretary of State, of ' an act to repeal the acts consolidated in the Revised Statutes of the year 1870,' the essential part of which was as follows :

' 1868. Chapters numbered 159 to 226, inclusive, except chapters 170, 173, 195, and 225.'

It appeared that all the venires for the grand jurors, who found the indictment, were issued from the office of the clerk of said court, July 22, 1871, returnable to the next September term of said court. That at said September term, 1871, said grand jurors were sworn and impaneled, and have never been sworn and impaneled at any other time or term of said court; that it was by this grand jury, thus selected, sworn, and impaneled, that said indictment was found at this term of said court.

The question raised and submitted to the law court for decision is as follows :

Shall said indictment be quashed for the reasons set forth in said motion, or shall it stand for trial ?

Deeming it important that this question of law should be determined before the action is tried, it is reserved for the consideration of the full court, as provided in R. S., c. 134, § 26, at the request of the county-attorney, and on motion of the respondent's counsel.

*T. H. Haskell*, in support of the motion, cited *State* v. *Maher*, 49 Maine, 569; R. S., c. 134, § 26 ; Pub. Laws, 1868, c. 216 ; Pub. Laws, 1870, c. 174 ; Pub. Laws, 1872, c. 1 ; *State* v. *Symonds*, 36 Maine, 128 ; *State* v. *Lightbody*, 38 Maine, 200 ; Const. of Maine, Art. I, § 7 ; Const. U. S., Art. XIV. § 1 ; *Taylor* v. *Porter*, 4 Hill, 147 ; *Green* v. *Briggs*, 1 Curtis C. C. 311 ; 18 How. 272 ; 4 Dev. N. C. 15 ; 5 Watts & Sergt. 193 ; 2 Kent's Com. 13 ; 13 N. Y. 393.

*T. B. Reed*, attorney-general, *contra*, in addition to the statutes, cited *Walter* v. *Bacon*, 8 Mass. 472 ; *Locke* v. *Dane*, 9 Mass. 363 ; *Davidson* v. *Johannot*, 7 Met. 388, 396 ; *Underwood* v. *Libby*, 10 Serg. & Rawle, 97, 106.

State of Maine *v.* Doherty.

DICKERSON, J. This case comes before us from the superior court for the county of Cumberland, on a motion to quash the indictment, duly verified and filed before the respondent pleaded. The motion alleges that the grand jurors, by whom the indictment was found and restored, were not lawfully selected, impaneled, sworn, and qualified to act as grand jurors; and the question to be determined is, shall the indictment be quashed for the reasons set forth in the motion, or shall the case stand for trial?

The criminal jurisdiction of the supreme judicial court for the county of Cumberland, was transferred from that court to the superior court of that county, by c. 216 of the Pub. Laws of 1868. That act was repealed by the act of 1870, which took effect from and after the first day of February, 1871. Jurisdiction in criminal cases was restored to the superior court by the act of 1872, which took effect Jan. 13, 1872. This indictment was found at the May term of the superior court, 1872, and the persons who found and returned it, as grand jurors, were drawn, as such, in obedience to venires issued by the clerk of the superior court, on July 22, 1871, and were sworn and impaneled at the September term of that court next following, and were not sworn or impaneled at any other term of said court.

The repeal of the act of 1868, which alone gave the superior court criminal jurisdiction, divested that court of such jurisdiction, and carried with it, also, the repeal of the authority given in that act to the clerk of the superior court to issue venires for grand jurors to serve at the criminal terms of said court. When, therefore, the persons who acted as grand jurors in finding this indictment were drawn and impaneled as grand jurors, for the superior court, there was no law authorizing such proceedings. Though the superior court is a court of common law, it derives its jurisdiction from the statute, and its proceedings, though conducted in accordance with the forms, will not be upheld when they lack the substance of legality. The drawing, swearing, and impaneling of the persons as grand jurors, who found this indictment, were, therefore, *coram non judice,* and void. Nor is this objection obviated by

the fact that the superior court had jurisdiction in criminal cases when this indictment was found, as that court cannot confirm and make valid what it undertook to do when it had no jurisdiction over the subject-matter, after it has become vested with such jurisdiction.

This difficulty, moreover, is not remedied by force of Art. I, § 7 of the constitution, which provides 'that the legislature shall provide by law, a suitable and impartial mode of selecting jurors.' The omission of the legislature to comply with this requirement of the constitution, in respect to the selection of grand jurors for the county of Cumberland from the repeal of the act of 1868 in 1871, to its reënactment in 1872, cannot be supplied or cured by the court. This court has no power to execute a requirement of the constitution that is exclusively devolved upon the legislature.

It is argued by the attorney-general, that the act of 1872, which restored the criminal jurisdiction of the superior court, also confirms, and makes legal and valid 'the doings' of that court in criminal cases when it had no criminal jurisdiction. In order to determine this question, it is necessary to consider the nature of those 'doings,' the power of the legislature to confirm them and make them legal and valid, and the intendment of the alleged act of confirmation.

We have seen that the infirmity of 'the doings' complained of in this case, consists in a want of compliance with the established course of judicial proceedings in criminal cases, both in respect to the jurisdiction of the superior court over the subject-matter, and also in drawing, swearing, and impaneling the persons, as grand jurors, who found the indictment.

If the legislature has the constitutional power to legalize and make valid 'the doings' of the superior court, notwithstanding these objections, and intended to do so by the act of 1872, the motion to quash the indictment must be overruled; otherwise it must be sustained.

The constitution of the United States, Art. XIV, § 1, provides that 'no State shall deprive any person of life, liberty, or property,

without due process of law;' and the constitution of this State, Art. I, § 6, also provides that ' the accused shall not be deprived of his life, liberty, property, or privileges, but by judgment of his peers, or the law of the land.' The expressions ' due process of law' and ' law of the land' have the same meaning. These provisions have their origin in *Magna Charta*, the keystone of the arch of the British constitution. They were wrested from the king as restraints upon the prerogatives of the crown, and were incorporated into the constitution of the United States, and the constitutions of many of the Federal States, as a safeguard against the encroachment upon these inherent rights of the people by congress or the State legislatures. When applied to proceedings in criminal cases, the expression ' due process of law,' or ' the law of the land,' means that no person shall be deprived of life, liberty, property, or privileges, without indictment or presentment by good and lawful men, selected, organized, and qualified, in accordance with some preëxisting law, and a trial by a court of justice, according to the regular and established course of judicial proceedings. Coke, 2 Inst. 46 ; 2 Kent, Com. 13 ; Story on Const. 661.

But what ' law ' is meant ? Is it statute law, or the common law ? If it be the former, what protection do these provisions afford the people against legislative usurpation and wrong ? The legislature might enact a law, and provide a regular course of judicial proceedings for its administration, the direct effect of which might be to deprive persons of the rights these provisions were intended to protect, if statutory law was intended by these provisions. In that case, the meaning of these constitutional provisions would be that no person should be deprived of any of the rights specified, unless the legislature should pass an act authorizing it ; instead of being a restraint upon legislative power, they would thus afford it unlimited scope and license. The framers of the constitution do not rest under the imputation of having committed any such absurdity.

The ' law ' intended by the constitution is the common law that had come down to us from our forefathers, as it existed and was

understood and administered when that instrument was framed and adopted. The framers of the constitution, and the people who adopted it, appreciated the protection afforded to life, liberty, property, and privileges, by the common law, and determined to perpetuate that protection by making its benign provisions in this respect the corner-stone principle of the fundamental law.

This construction is sustained by authority as well as principle. Judge Story says, ' The clause " by law of the land," in effect, affirms the right of trial according to the process and proceedings of the common law.' 3 Com. on Const. U. S. 1783. Tenny, J., in *Saco* v. *Wentworth*, 37 Maine, 171, says, ' The " law of the land," as used in the constitution, has long had an interpretation which is well understood and practically adhered to. It does not mean an act of the legislature.'

In *Taylor* v. *Porter*, 4 Hill, 145, Chief Justice Bronson says, ' The words " law of the land," as here used, do not mean a statute. . . . The meaning of the section seems to be that no member of the State shall be disfranchised of any of his rights and privileges, unless the matter be adjudged against him upon trial had according to the course of the common law. . . . It cannot be done by legislation.'

So in *Norman* v. *Heist*, 5 Watts & Serg. 193, Chief Justice Gibson, in considering a similar provision in the constitution of Pennsylvania, asks, ' What " law ?" Undoubtedly a preëxisting rule of conduct, not an *ex post facto* rescript or decree made for the occasion. The design of the convention was to exclude arbitrary power from every branch of the government, and there would be no exclusion if such rescripts or decrees were to take effect in the form of a statute.'

So the court in North Carolina say, ' The term " law of the land " does not mean merely an act of the assembly. If it did, every restriction upon the legislative authority would be at once abrogated.' *Hoke* v. *Henderson*, 4 Dev. 15.

The usages of the common law, in criminal cases, require that there should be a court having jurisdiction of the offense when the

State of Maine *v.* Doherty.

venires are issued for drawing the grand jurors, and that the persons thus drawn should be sworn before such a court. It is not sufficient that the person issuing the venires claims to be clerk of such court, or that the tribunal which causes those who have been drawn as grand jurors to be sworn and impaneled as such claims to be a court; both these persons must actually be of the capacity they purport to be for these purposes. It is not enough that the mere forms of law are observed; there must, also, be present the actual essence of judicial right and authority. If such void claims and empty forms could impart legality to criminal proceedings, it is plain to see that the law might be perverted for the purposes of wrong and oppression. *State* v. *Plummer*, 50 Maine, 217; *State* v. *Hanscom*, 39 Maine, 337; *State* v. *Furlong*, 26 Maine, 69.

Both these requirements of the constitution were wanting in the case before us. The clerk had no authority to issue the venires for drawing grand jurors to attend before the criminal term of the superior court, and that court had no criminal jurisdiction when it undertook to cause the persons thus drawn as grand jurors to be sworn and impaneled as such. If the respondent had been tried, convicted, sentenced, and imprisoned, under this indictment, it is clear that he ' would have been deprived of his liberty ' ' without due process of law,' and contrary to ' the law of the land.'

The legislature has no authority to authorize or confirm an infraction of the constitution; and if the act of 1872 was intended ' to confirm and make legal and valid ' the ' doings ' of the superior court under consideration, it cannot be permitted to have that effect, but must be held to be unconstitutional, and, therefore, null and void.

This court will not pass upon the constitutionality of an act of the legislature, unless that is necessary for the decision of the case, and, in that event, it will not declare an act of the legislature unconstitutional unless the question is free from all rational doubt. It will, also, presume that the legislature understood and pursued its constitutional authority, and that it did not misapprehend or exceed it.

Keeping these principles of construction steadily in view, we cannot doubt that that clause in the act of 1872, which undertakes to confirm and make legal and valid the doings of the superior court in criminal cases, which had been in accordance with the provisions of that act, when that court had no criminal jurisdiction, is unconstitutional and void. It assumes retroactively to invest with the authority, force, and effect of law proceedings, trials, judgments, sentences, and punishments in criminal cases, which, up to the time of its enactment were illegal and void, and which, but for it, would have remained so to this day. It is clearly within the class of subjects, inhibited by the national and State constitutions, as topics of legislation, and is included in the provision against passing any law to deprive any person of life, liberty, or property, 'without due process of law,' or ' but by the law of the land.'

*Motion sustained.*

*Indictment quashed.*

APPLETON, C. J.; CUTTING, WALTON, and DANFORTH, JJ., concurred.