### STATE of Maine
### v.
### Kirk DOWD.

Supreme Judicial Court of Maine.

Argued Jan. 10, 1984.

Decided June 4, 1984.

Gene Libby, Dist. Atty., Michael E. Saucier, Asst. Dist. Atty. (orally), Alfred, for plaintiff.

Boone & Cantara, James P. Boone (orally), Biddeford, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The defendant, Kirk Dowd, appeals from a judgment of the Superior Court, York County, affirming a judgment of conviction for operating an automobile while his driver's license was suspended (OAS), 29 M.R.S.A. § 2184 (Supp.1983–1984),[1] entered af-

---

**1.** 29 M.R.S.A. § 2184 provides in pertinent portion:

§ 2184. Driving while license or registration suspended or revoked

1. Offense; penalty. No person may operate a motor vehicle on any public highway of this State at a time when his license or permit to operate, his right to operate or his right to apply for or obtain a license or permit has been suspended or revoked, except for a revocation as an habitual offender under chapter 18–A or former chapter 18, when that person:

A. Has received written notice of a suspension or revocation pursuant to section 1312–D, subsection 1, or section 2241–H or other written notice from the Secretary of State;

B. Has been orally informed of the suspension or revocation by a law enforcement officer who is aware of the information as a result of records maintained by the Secretary of State, including those obtainable by telecommunications;

C. Has actual knowledge of his suspension or revocation;

ter a trial in the District Court, Biddeford. The defendant's contentions on appeal are twofold. First, the defendant argues that the District Court could not lawfully convict him of OAS because the court that imposed the underlying suspension was without authority to do so, and therefore, no valid suspension existed. Second, the defendant contends the use of his previous uncounseled operating while under the influence of intoxicating liquors (OUI) adjudication to enhance the penalty imposed upon his conviction for OAS violated his right to due process of law under the United States and Maine Constitutions. Agreeing only with the latter contention, we vacate the sentence.

## I.

On March 14, 1982, a Saco police officer arrested the defendant and charged him with OUI in violation of 29 M.R.S.A. § 1312-B (Supp.1983-1984).[2] Subsequently, an assistant district attorney reviewed the case, and, pursuant to 29 M.R.S.A. § 1312-C (Supp.1983-1984),[3] made an elec-

---

D. Is a person to whom written notice was sent by ordinary mail at the last known address shown by the records maintained by the Secretary of State; or

E. Has failed to appear in court pursuant to any notice or order specified in section 2301-A.

Violation of this section is a Class D crime, provided that, notwithstanding Title 17-A, section 1301, the maximum fine shall be $2,500.

1-A. Minimum mandatory sentences for certain suspensions. In the event the suspension was for a conviction for a violation of former section 1312, subsection 10 or section 1312-B or an adjudication for a violation of section 1312-C or for a failure to comply with the duty to submit for a blood-alcohol test under section 1312, subsection 2, the court shall impose a minimum fine of $350, which minimum shall not be suspended; a term of imprisonment which shall be for not less than 7 consecutive days, which minimum shall not be suspended; and a mandatory suspension of license or permit or right to operate a motor vehicle, or right to apply for or obtain a license, for not less than one year nor more than 3 years consecutive to the original suspension, which minimum period shall not be suspended....

2. The charging instrument was a uniform traffic ticket and complaint. *See* 29 M.R.S.A. § 2300 (1978 and Supp.1983-1984) (when signed and sworn to, uniform traffic ticket and complaint constitutes charging instrument).

3. 29 M.R.S.A. § 1312-C provides in pertinent part:

§ 1312-C. Traffic infraction of operating under the influence of intoxicating liquor or drugs or with an excessive blood-alcohol level; fine and suspension

1. Election of charge. When a person has been arrested or summonsed under section 1312 for a violation of section 1312-B, the attorney for the State may elect to charge the defendant with the traffic infraction of operating under the influence of intoxicating liquor or drugs or with an excessive blood-alcohol level under this section. The determination of the attorney for the State, under provisions of subsections 5 and 7, that a person should be prosecuted under either this section or under section 1312-B shall not be subject to review.

2. Traffic infraction defined. A person commits a traffic infraction under this section if he operates or attempts to operate a motor vehicle:

A. While under the influence of intoxicating liquor or drugs or a combination of liquor and drugs; or

B. While having 0.10% or more by weight of alcohol in his blood.

....

3. Fine. The traffic infraction of operating under the influence of intoxicating liquor or drugs or operating with an excessive blood-alcohol level is a violation for which a fine of not less than $250 nor more than $500 may be adjudged. The minimum fine shall not be suspended.

4. Suspension. The license or permit to operate, right to operate a motor vehicle or right to apply for or obtain a license of any person adjudicated guilty of violating subsection 2 shall be suspended by the court for a period of 45 days. The period of suspension shall not be suspended by the court. The court shall give notice of the suspension and shall take physical custody of an operator's license or permit as provided in section 2241-H. The Secretary of State may impose an additional period of suspension, as provided in section 1312-D, subsection 1-A, and may extend any period of suspension until satisfaction of any conditions imposed by him pursuant to section 1312-D, subsection 3.

5. In lieu of criminal violation. The attorney for the State shall not elect to charge a violation of subsection 2 in lieu of criminal prosecution under section 1312-B with respect to any defendant who:

A. Was tested as having a blood-alcohol level of 0.20% or more;

tion to charge the defendant with a civil rather than criminal violation. After written notification of the election was transmitted to the District Court clerk's office, a deputy clerk prepared a complaint and docketed the case as a civil action. The clerk failed to include the written notice of election in the record, however, and did not note on the docket sheet that the statutory election had been made. Without having had the benefit of legal representation,[4] the defendant entered a guilty plea in the District Court to the OUI charge on April 13, 1982, and judgment of conviction was entered. The court imposed a fine and suspended the defendant's driver's license for forty-five days.

On June 9, 1982, the defendant was charged with operating a motor vehicle after suspension of his license in violation of 29 M.R.S.A. § 2184. At trial, the defendant stipulated the facts of operation and suspension,[5] and was adjudged guilty. When the state moved to impose sentence, the defendant argued that the court could not impose the statutory minimum jail sentence for OAS following an OUI adjudication because he had not been represented by counsel during the previous OUI proceeding from which the suspension resulted. Moreover, on August 24, 1982, the defendant, relying on our decision in *State v. Chubbuck*, 449 A.2d 347 (Me.1982), filed a written motion in arrest of judgment. The defendant argued that because no affirmative election to charge him with a civil violation appeared on the record, the District Court had been without jurisdiction to suspend his driver's license in the civil OUI proceeding and thus was without jurisdiction to proceed to entry of judgment in the later OAS prosecution. At oral argument on the motion, the State moved to supplement the record to show that in the OUI proceeding the prosecutor had in fact made a timely affirmative election to charge a civil violation.

Interpreting *Chubbuck* as allowing the state to cure retroactively a failure to establish on the record the existence of an affirmative section 1312-C election, the District Court allowed the state's motion and denied that of the defendant. Additionally, the District Court rejected the defendant's argument that the previous uncounselled OUI conviction could not form

---

B. Was driving in excess of the speed limit by 30 miles an hour or more during the operation which resulted in the prosecution for operating under the influence or with a blood-alcohol level of 0.10% or more;

C. Eluded or attempted to elude an officer, as defined in section 2501-A, subsection 3, during the operation which resulted in the prosecution for operating under the influence or with a blood-alcohol level of 0.10% or more; or

D. Had been convicted of a violation of former section 1312, subsection 10, paragraph A, convicted of a violation of section 1312-B, or adjudicated guilty of a traffic infraction under this section within the 6 years immediately preceding the date of the commission of the new offense.

. . . .

7. Other circumstances. The attorney for the State may elect to charge a violation of section 1312-B, in lieu of civil prosecution under this section, in any other circumstances. These circumstances include, but are not limited to, when the defendant:

A. During the course of the operation which resulted in the prosecution for operating under the influence:

(1) Was operating between one and 30 miles an hour in excess of the speed limit;

(2) Failed to stop for an officer, as defined in section 2501-A, subsection 2;

(3) Was involved in a traffic accident; or

(4) Committed any other moving violation which the attorney for the State believes warrants criminal prosecution; or

B. Had failed to comply with the duty to submit to take a blood or breath test within the 6 years immediately preceding the operation which resulted in the prosecution for operating under the influence or with a blood-alcohol level of 0.10% or more.

The discretion of the attorney for the State under this subsection shall not be subject to review.

4. At trial, the presiding judge informed the defendant that he had no right to court-appointed counsel even if indigent because 29 M.R.S.A. § 1312-C does not authorize incarceration upon conviction.

5. The defendant was represented by appointed counsel at the trial.

the basis for the OAS conviction with its concomitant mandatory jail term. Pursuant to the mandate of 29 M.R.S.A. § 2184(1–A), the court imposed a fine of $350 and a sentence of seven days. The Superior Court affirmed, and this appeal follows.

## II.

An individual who operates a motor vehicle while having 0.10% or more by weight of alcohol in his blood is guilty of a Class D criminal offense. 29 M.R.S.A. § 1312–B(1)(B). *See generally State v. Pickering,* 462 A.2d 1151 (Me.1983) (discussing statutory scheme). In lieu of criminal charges, the attorney for the state may in certain circumstances elect to charge an individual arrested for driving under the influence with a civil traffic infraction. 29 M.R.S.A. § 1312–C(1). The decision to proceed under section 1312–C is committed to the sole province of the prosecuting attorney, and is not subject to judicial review. *Id.*

In *State v. Chubbuck,* 449 A.2d 347 (Me. 1982), a fact pattern similar to that presented here, we discussed the procedure which must be followed before a trial court can proceed to an adjudication of liability for a traffic infraction under section 1312–C. The defendant in *Chubbuck* was arrested for OUI and issued a summons in the form of a Uniform Traffic Ticket and Complaint (UTT). The UTT, the charging instrument, *see* 29 M.R.S.A. § 2300, did not specify whether the defendant was being charged under section 1312–B or 1312–C.[6] Thereafter, a complaint was issued against the defendant which recited that the OUI charge was brought pursuant to section 1312–C. Neither the UTT, complaint, nor docket sheet, however, showed that the prosecutor was involved in any respect

with the decision to proceed civilly. *State v. Chubbuck,* 449 A.2d at 349–51.

After determining the UTT must be treated as charging a criminal violation,[7] we addressed the procedural prerequisites to converting the charge to a civil traffic infraction. We noted that pursuant to section 1312–C, only a prosecutorial election may result in the charge being treated as other than criminal. Because of the important consequences which flow from this choice, and to ensure both the trial and reviewing courts can determine whether a defendant charged under section 1312–C has been properly deprived, within the context of the statutory scheme, of the constitutional and procedural rights that attach in a criminal proceeding, we held the occurrence of the prosecutorial election must be demonstrated on the record. *Id.* at 351.

The defendant would have us interpret *Chubbuck* as imposing as a matter of jurisdiction the requirement that the fact of prosecutorial election appear on the docket. If such requirement is jurisdictional, argues the defendant, a failure to comply cannot be cured retroactively as the prosecutor did in the instant case. *See State v. Doherty,* 60 Me. 504 (1872) (where court lacked jurisdiction over criminal proceeding at time it acted, act is nullity; subsequent statute conferring jurisdiction does not cure defect).

■ Although certain language in *Chubbuck* might be read as supportive of the defendant's position, such interpretation is neither consistent with our intent in *Chubbuck* nor mandated by sound judicial policy. In *Chubbuck,* we made clear the District Court can proceed with an OUI as a civil violation only if the prosecutor has, in fact, made the statutory election. The failure of the record to reflect the prosecutorial election is a procedural defect which may

---

6. The UTT recited a violation of "Title 29[,] Section 1312 … Violation [;] Operating a M/V While Under the Influence of Intoxicating Liquor." *State v. Chubbuck,* 449 A.2d at 349.

7. We reasoned that the statute clearly states that only a prosecutor can make the statutory elec-

tion to convert a 1312–B charge to a 1312–C charge. Since no prosecutor took part in the preparation of the UTT, it must have charged the criminal violation. *State v. Chubbuck,* 449 A.2d at 349–50.

be cured retroactively by an affirmative showing that such was made.

■ In contrast to *Chubbuck*, the record in the instant case, albeit cured retroactively, clearly demonstrated that the prosecutor had, in fact, made the statutory election to proceed under section 1312–C in the initial OUI action. The resulting suspension was therefore valid, and by operating an automobile while the suspension was in effect, the defendant violated 29 M.R.S.A. § 2184. Accordingly, we affirm the judgment of conviction.

### III.

■ Because the assistance of counsel is often a requisite to the very existence of a fair trial, an indigent defendant is entitled under the United States Constitution to appointed counsel in all felony cases, *Gideon v. Wainwright*, 372 U.S. 335, 342–45, 83 S.Ct. 792, 795–97, 9 L.Ed.2d 799 (1963), and in misdemeanor cases in which actual imprisonment will be imposed. *Scott v. Illinois*, 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1161–62, 59 L.Ed.2d 383 (1979); *Argersinger v. Hamlin*, 407 U.S. 25, 32, 37, 92 S.Ct. 2006, 2010, 2012, 32 L.Ed.2d 530 (1972). To satisfy the demands of the due process clause of our state constitution, an indigent criminal defendant brought to trial in Maine is entitled to appointed counsel also when facing charges which *might* result in the imposition of incarceration for a period of more than six months or a fine of more than $500 or both. *Newell v. State*, 277 A.2d 731, 738 (Me.1971); *see* Me. Const. art. I, § 6–A (no person shall be deprived of liberty without due process of law). *See generally State v. Sklar*, 317 A.2d 160, 164–66 (Me.1974) (discussing *Newell* decision).

■ Defendant Kirk Dowd, although not claiming a deprivation of the right to counsel in the civil OUI proceeding, contends that the use of the uncounseled OUI adjudication to enhance the penalty imposed upon

his conviction for OAS violated his right to due process of law under the United States and Maine Constitutions. We agree.

In a series of decisions, the United States Supreme Court has addressed the permissibility of the use of uncounseled criminal convictions in subsequent criminal proceedings. In *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Court stated that an uncounseled felony conviction could not be used in a later trial to enhance punishment under a Texas recidivist statute. *Id.* at 115, 88 S.Ct. at 262. The Court observed:

> To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person *either to support guilt or enhance punishment* for another offense (*see Greer v. Beto*, 384 U.S. 269 [86 S.Ct. 1477, 16 L.Ed.2d 526]) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

(emphasis added).[8] Thereafter, in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Court, reasserting the principle that uncounseled felony convictions cannot be used to enhance punishment, held a court cannot consider previous uncounseled felony convictions when imposing sentence. *Id.* at 449, 92 S.Ct. at 593. Moreover, in *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), a plurality of the Court held the use for impeachment purposes of prior convictions obtained in violation of *Gideon* similarly deprived an individual of due process of law. *Id.* at 482–83, 92 S.Ct. at 1018–19. The Court reasoned that such use impermissibly supported guilt, as proscribed in *Burgett*. *Id.*

In a case more similar to the one at bar, the Supreme Court, in *Baldasar v. Illinois*,

---

**8.** The Texas recidivist statute provided that a second felony conviction for the same or a similar offense must be punished by the harsh-est sentence authorized for that offense. *Burgett v. Texas*, 389 U.S. at 111 and n. 4, 88 S.Ct. at 259–60 and n. 4.

446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), considered whether an uncounseled misdemeanor conviction in which the defendant was not constitutionally entitled to appointed counsel may be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a mandatory prison term. Under an Illinois statute, a first conviction for theft not from the person of property with a value less than $150 was a misdemeanor punishable by imprisonment for not more than one year. A second violation was a felony, punishable by one to three years incarceration. *Id.* at 223, 100 S.Ct. at 1585. A five-member plurality of the Court reversed the second conviction.[9] Four members of the plurality reasoned previous case law made clear an indigent criminal defendant could not be deprived of liberty unless the state first afforded him the benefit of assistance of counsel. The effect of the Illinois statute was to work a deprivation of liberty as the direct and sole consequence of a previous uncounseled conviction. *Id.* at 224, 100 S.Ct. at 1586. (Stewart, J., concurring), 226–27, 100 S.Ct. 1587–88 (Marshall, J., concurring). Justice Marshall explained that a rule that held a conviction invalid for imposing a prison term directly, but valid for imposing such collaterally, would be illogical and an unworkable deviation from previous case law. *Id.* at 228, 100 S.Ct. at 1588.

The appellee argues that the instant case falls outside the reach of *Burgett, Tucker, Beto,* and *Baldasar,* and is controlled by the Supreme Court's decision in *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). In *Lewis,* the defendant, without having the assistance of counsel, was convicted of a felony and sentenced to a term of imprisonment. *Id.* at 56–57, 100 S.Ct. at 916–17. Thereafter, Lewis was arrested and charged under a federal statute prohibiting the possession of a firearm by a convicted felon. Although acknowledging *Burgett, Tucker,* and *Beto,*[10] the *Lewis* Court declared that prior case law did not invalidate the use of uncounseled convictions for all purposes. The Court examined the legislative history behind the statute prohibiting possession of firearms by convicted felons, and concluded that Congress did not intend to allow a defendant to question the validity of his prior conviction under the statute. *Id.* at 62, 100 S.Ct. at 919. The Court found no indication of any legislative intent that the validity of the underlying conviction be a requisite to the civil liability created by the statute. *Id.* at 63, 100 S.Ct. at 919–20. Declaring that Congress could rationally conclude that "any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm," the Court held that the use of the uncounseled felony conviction as the basis for imposing a civil firearms disability, enforceable by a criminal sanction, is constitutionally permissible. *Id.* at 66–67, 100 S.Ct. at 921–22. The Court distinguished *Burgett, Tucker,* and *Loper* on the ground that in each the subsequent conviction depended on the *reliability* of the past uncounseled conviction. The federal gun law, stated the Court, focused "not on reliability, but on the mere fact of conviction," and the legislative judgment to so limit its focus was a rational one. *Id.* at 67, 100 S.Ct. at 921–22. Finally, the Court stated that enforcement of a civil disability through a criminal sanction did not "support guilt or enhance punishment" on the basis of an unreliable conviction. *Id.*

---

9. The plurality holding was expressed in three separate opinions. Justice Blackmun joined the plurality only because his own "bright line" rule articulated in dissent in *Scott v. Illinois, i.e.,* an indigent criminal defendant is entitled to appointed counsel only for offenses punishable by more than six months' imprisonment, was violated. *See Scott v. Illinois,* 440 U.S. at 389–90, 99 S.Ct. at 1170 (Blackmun, J., dissenting). Because Justice Blackmun provided the deciding vote, the precedential value of *Baldasar* has been questioned. *See, e.g., United States v. Robles-Sandoval,* 637 F.2d 692, 693 n. 1 (9th Cir.), *cert. denied,* 451 U.S. 941, 101 S.Ct. 2025, 68 L.Ed.2d 330 (1981).

10. The *Lewis* decision was issued prior to *Baldasar.*

The distinction that appears to separate *Lewis* from *Baldasar* is whether the statute considered enhances punishment, or punishes criminally a civil disability which has been imposed by rational judgment of the legislature. We have recognized this distinction as a matter of Maine constitutional law. *See State v. O'Neill*, 473 A.2d 415 (Me.1984); *State v. Vainio*, 466 A.2d 471 (Me.1983), *cert. denied*, — U.S. —, 104 S.Ct. 2385, 81 L.Ed. 344 (1984); *Green v. State*, 237 A.2d 409 (Me.1968). With this distinction in mind, we turn to a discussion of the statutes involved in the instant case.

Any person adjudicated guilty of operating a motor vehicle while under the influence of intoxicating liquors has committed a traffic infraction within the meaning of 29 M.R.S.A. § 1312–C, and is subject to the automatic civil disability of license suspension for forty-five days. 29 M.R.S.A. § 1312–C(4).[11] Title 29 M.R.S.A. § 2184 addresses the penalties imposed for violation of this civil disability. Operating after suspension is a Class D crime generally punishable under our statutory scheme by imprisonment for a term of less than one year, *see* 17–A M.R.S.A. § 1252(2)(D) (1983), and by fine of up to $2,500, 29 M.R.S.A. § 2184(1).

Title 29 M.R.S.A. § 2184 can properly be classified as imposing a criminal sanction which enforces a civil disability. The legislature can be said to have concluded rationally that any adjudication for OUI, including an uncounseled one, is a sufficient basis on which to prohibit an individual from operating an automobile. The dichotomous penalty structure created by section 2184, however, is particularly troublesome. When, and only when, the underlying license suspension is a result of a criminal conviction of or civil adjudication for OUI, or of a failure to submit to a blood-alcohol test, do imprisonment and fine become mandatory. 29 M.R.S.A. § 2184(1–A).[12] A prior uncounseled conviction or adjudication directly results in enhancement of the penalty to be imposed. This result is con-

trary to the teaching of *Baldasar* and its predecessors that an uncounseled conviction cannot be used to enhance penal sanctions in a later criminal proceeding, and violates the due process clause of our state constitution. Accordingly, we hold that no mandatory penalty could be imposed on Kirk Dowd. The Maine Constitution mandates that the sentencing judge sentence Dowd as he would had the underlying suspension resulted from an offense other than operating while under the influence of an intoxicant or a failure to submit to a blood-alcohol test.

The entry is:

Judgment of conviction affirmed. Sentence vacated.

Remanded to District Court for further proceedings consistent with the opinion herein.

All concurring.

---

**11.** *See supra* note 3 (reproducing section 1312–C).

**12.** *See supra* note 1 (reproducing OAS statute).